UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAYVON L. BOATMAN,

          Plaintiff,

vs.   Case No. 2:10-cv-743-FtM-29DNF

T. BUDZ, G. EMANOILIDIS, AND R. LAWRENCE,

          Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court upon Defendants' Motion to Dismiss for Fraud Upon the Court (Doc. #31, Motion). Defendants request that the Court dismiss the instant action because Plaintiff "committed a fraud upon the Court by manufacturing evidence that goes to the heart of his Complaint." Motion at 4, ¶17, 5. In support of their Motion, Defendants submit the Affidavit of Brian L. Masony (Doc. #32, Masony Aff.) Plaintiff filed a response in opposition to the Motion (Doc. #42, Response). This matter is ripe for review.

**I.**

Plaintiff, who is civilly committed to the Florida Civil Commitment Center ("FCCC") pursuant to Florida's Involuntary Civil Commitment of Sexually Violent Predators Act, §§ 916.31-916.49, Florida Statutes, has pending a *pro se* Civil Rights Complaint (Doc. #1, Complaint). The Court granted Plaintiff's motion to proceed *in forma pauperis* in this action (Docs. #4, #5). The Complaint

alleges that Defendants violated Plaintiff's Fourteenth Amendment rights by failing to protect him from attacks by other FCCC residents. See generally Complaint. More specifically, Plaintiff alleges that, on November 15, 2008, he was attacked and beaten by FCCC residents Jenkins and Holder. Complaint at ¶¶10-11. Plaintiff claims that, on November 19, 2008, he told Defendant Emanoilidis that Jenkins and Holder had threatened to attack and beat him again after they were released from confinement. Id., ¶12. Plaintiff states that, despite the apparent threat to him, Defendant Emanoilidis assigned Jenkins and Holder to the same housing unit as Plaintiff upon their release from confinement. Id., ¶13. On December 12, 2008, Plaintiff claims that Jenkins and Holder again attacked and beat him. Id. Plaintiff attaches eight pages as exhibits to his Complaint in support of his factual averments.[1] The following is a summary of the pertinent information contained in the exhibits attached to Plaintiff's Complaint:

(1) "FCCC Resident Grievance" signed and dated by Plaintiff on **11/16/08**, referencing grievance number 4348. In the "Summary" section of the grievance, Plaintiff states that he "filed several grievances to date . . . about the risk to my person . . . by staff and residents alike." Plaintiff states that he was assaulted on 11/15/08 by residents Jenkins and Holder and "seriously injured." In the response section FCCC staff states that Plaintiff's "issues are currently under investigation at this time by both the facility and the DeSoto County Sheriff's Office." See Exhibit C-D (Doc. #1-1 at 5-6 of 8).

---

[1]The Court has rearranged Plaintiff's Exhibits attached to his Complaint chronologically by date.

(2) "FCCC Resident Grievance" signed and dated by Plaintiff on **11/18/08**, referencing grievance number 4364. In the "Summary" section of the grievance, Plaintiff states that he was "threatened three times due to confinement" of residents Jenkins and Holder "by three other residents." Plaintiff complains that there is a "lack of security." In the response section FCCC staff states that Plaintiff was offered but refused "protective custody." Further, staff states that the incident is "still under investigation" but that residents Jenkins and Holder "remain in secure management at this time." See Exhibit A (Doc. #1-1 at 3).

(3) "FCCC Resident Grievance" signed and dated by Plaintiff on **12/14/08** with no referenced grievance number. In the "Summary" section of the grievance, Plaintiff states that, on 11/19/08, he spoke with Dr. Emanoilidis and told him that "J. Holder and A. Jenkins threatened to subject [Plaintiff] to further violent attacks and beat [him] when the two were released from confinement." Despite this knowledge, Dr. Emanoilidis "placed Jenkins and Holder in the same unit with [Plaintiff]." Plaintiff further states that he was beaten by residents Holder and Jenkins on 12/12/08, and he sustained injuries to his "body, shoulder, and back." There is no response from FCCC staff to the grievance. See Exhibits C-D (Doc. #1-1 at 1-2 of 8).

(4) "FCCC Resident Grievance Appeal" signed and dated by Plaintiff on **12/25/08**, referencing grievance number 4348. In the "Resolution" section of the appeal, Plaintiff states that he has "a constitutional and statutory right . . . "to be free from harm, injury, intimidation, and an environment free of same. . . ." In the response section FCCC staff state that they are of the "understanding" that Plaintiff is "in protective custody" and the "charge of assault" is being investigated by the sheriff's office. See Exhibit F (Doc. #1-1 at 8 of 8).

(5) "FCCC Resident Grievance Appeal" signed and undated by Plaintiff with "date received" marked **12/31/08**, referencing grievance number 4364. In the "Resolution" section of the appeal, Plaintiff states that he has "the right to live in a safe environment. . . ." He states that he was assaulted on "11/15/08, then assailants [sic] put again in position to do it again or worse." In the response section FCCC staff refer Plaintiff to the reply for grievance 4348. See Exhibit B (Doc. #1-1 at 4 of 8).

(6) "FCCC Resident Grievance Appeal" signed and **undated** by Plaintiff with no date received, referencing grievance number 4364. Appears to be duplicate of (5) above without response. See Exhibit E (Doc. #1-1 at 7 of 8).

Plaintiff signed his Complaint "under penalties of perjury." Complaint at 10.

Defendants submit that Plaintiff's grievance dated 12/14/08, which is attached as Exhibit C to the Complaint, is fraudulent. Motion at 3, ¶¶10-12. Defendants attest that the particular form of grievance, with the ascribed 12/14/08 date, did not exist until December 2009, more than a year after Plaintiff supposedly submitted the grievance. In support, Defendants attach the Affidavit of Brian Masony with exhibits A-D. Mr. Masony testifies that the FCCC used a particular grievance form during the years 2008 and 2009. Masony Aff., ¶6. A copy of the grievance form that was used at the FCCC during 2008 and 2009 is attached as exhibit A to Mr. Masony's Affidavit. Id. Mr. Masony explains that "[a] decision was made in the latter part of 2009 to change the design of the FCCC grievance form." Id., ¶7. A copy of the new grievance form adopted for use at the FCCC in the latter part of December 2009 is attached as exhibit B to Mr. Masony's Affidavit. Id. On December 8, 2009, the FCCC received a quote from Buffalo Graffix for the cost to print the newly designed grievance forms. Id., see Exh. C (copy of "proposal" from Buffalo Graffix for typesetting "changes to grievance form" and printing of new forms). On December 15, 2009, the GEO Group issued a purchase requisition approval for 500 copies of the new grievance form. Id., ¶9; see Exh. D (copy of Purchase Requisition Approval Form). Consequently,

because the particular form of grievance submitted as Exhibit C to Plaintiff's Complaint did not exist until sometime after December 15, 2009, Plaintiff could not have submitted this particular grievance to FCCC officials on December 14, 2008.

Plaintiff does not dispute that Exhibit C was either fabricated or back-dated. Instead, Plaintiff states he had "no intent . . . to defraud any Court . . . ." Reply at 1. Plaintiff argues that the Court is required to assume all the allegations in the Complaint are true and contends that he "did not alledge [sic] in his Complaint about any fraud in the communications he submitted to the defendants." Id. at 3. Plaintiff appears to concede that he did "create" Exhibit C, but argues it was done "for his own records and never served upon defendants for their review." Id. at 6. Plaintiff argues that the information in Exhibit C was also set forth in the other grievances that were submitted to defendants. Id. And, Plaintiff maintains that Defendants, nonetheless, had knowledge of residents Holder and Jenkin's propensity for violence toward Plaintiff and other residents. Id. at 9.

**II.**

A court is vested with inherent power "to punish bad faith conduct." In re Ocon, Case No. 08-11226, 2009 WL 405370, *1 (11th Cir. 2009)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991)). "A party commits a fraud upon the court when the falsehood mires the 'judicial machinery' such that it 'cannot perform in the usual

manner its impartial task of adjudging cases . . . ." Id. (quoting Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir. 1985)).  "[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978).[2]  In other words, a movant must show an "unconscionable plan or scheme" to improperly influence the court's decision. Id.; See also Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1338 (11th Cir. 2002)(affirming dismissal of case with prejudice as sanction for committing fraud upon the court by misleading the court as to who was the real owner of the automobile at issue in case).

Additionally, the Court may dismiss the case at anytime, if the Court determines that the allegation of poverty is untrue, the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).  Further "[a] finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics warrants

---

[2] Unless later superceded by Eleventh Circuit precedent, a Fifth Circuit decision issued prior to the close of business on September 30, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

dismissal." Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997)(citations omitted).

Alternatively, Rule 11 requires an unrepresented party to sign "[e]very pleading, written motions, and other paper" that is filed with the court." Fed. R. Civ. P. 11(a). By signing, the party is representing to the court that the document is not being presented for an improper purpose and that the "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1). Thus, the Court may impose sanctions, including dismissal of an action, "if a party knowingly files a pleading that contains false contentions." Redmond v. Lake Cnty Sheriff's Office, 414 F. App'x 221, 225 (11th Cir. 2011)(citing Fed. R. Civ. P. 11(c)); see also Smith v. Bruster, 424 F. App'x 912, 915 (11th Cir. 2011)(finding that "[f]iling forged pleadings with the court constitutes presenting a pleading for an improper purpose and in bad faith, in violation of Rule 11(b).").[3]

### III.

Defendants seek dismissal of the instant action on the basis that Plaintiff's fabrication of the December 14, 2008 grievance constitutes fraud upon the court. Motion at 4, ¶17. Defendants argue that the December 14, 2008 grievance "goes to the heart of [Plaintiff's] Complaint," because it "makes it appear as though the

---

[3]Because Defendants did not move pursuant to Rule 11, the Court will not consider Rule 11 sanctions at this time. Fed. R. Civ. P. 11(c).

-7-

Defendants had notice of a potential second attack." Id. Defendants further submit that the facts averred in the December 14, 2008 grievance "are themselves suspect" in light of the fact that none of Plaintiff's other submitted grievances allege that Plaintiff was attacked a second time on December 12, 2008 by residents Holder and Jenkins. Id. In particular, Defendants point out that in Plaintiff's December 13, 2008 grievance, which Plaintiff submitted the day after the alleged second attack, Plaintiff does not state that he was attacked but instead claims that he does "not feel safe," he is being "set up, threatened," and he believes he is being "forced to be put in confinement." Motion, exhibit 2 (Doc. #31-2).

Upon review, the Court finds that the December 14, 2008 grievance is the same form of grievance that Mr. Masony attests was not used at the FCCC until the latter part of December 2009. Thus, it is clear that Plaintiff fabricated Exhibit C in its totality, or at a minimum back-dated Exhibit C. Plaintiff references Exhibit C in his Complaint. Complaint at ¶11, ¶15. It appears that Plaintiff created Exhibit C as evidence that he had notified Defendant Emanoilidis prior to the alleged second attack and that he had reported the alleged second attack immediately afterwards. Indeed, Plaintiff's allegation that he was attacked a second time only appears in Exhibit C, but does not appear anywhere else in Plaintiff's other exhibits. Nonetheless, the Court need not

-8-

determine whether Plaintiff's allegation of a second attack lacks veracity.  The Court finds sufficient evidence that Exhibit C was not created on the date indicated on the document. Consequently, the Court will dismiss this case, without prejudice, pursuant to the Court's inherent power for abuse of the judicial process. or in the alternative under Rule 11.  Because the Court is dismissing this action without prejudice, Plaintiff is required to initiate a new action if he wishes to prosecute his claim.  Plaintiff is prohibited, however, from using Exhibit C as evidence in support of his claim in any future action.

ACCORDINGLY, it is hereby

**ORDERED**:

1.   Defendants' Motion to Dismiss (Doc. #31) is **GRANTED** to the extent that the Court will **dismiss this case without prejudice** as a sanction for Plaintiff's abuse of the judicial process.

2.   Plaintiff is prohibited from using, attaching, or referencing Exhibit C in any future action.

3.   The **Clerk** shall enter judgment accordingly, terminate any pending motions and deadlines, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __2nd__ day of August, 2012.

*John E. Steele*
JOHN E. STEELE
United States District Judge

SA: hmk
copies: All parties of record